All right. Ms. Hashimoto, can you hear me? Yes, your honor. And Ms. Kahn, can you hear me? Yes, your honor. And Ms. Kalin? Yes, your honor. All right. We're all on board. We'll hear the case of Desper v. Clarke. And Ms. Hashimoto, I suppose you're going to make an introduction. And we look forward to that. Yes, your honor. Thank you. My name is Erica Hashimoto, and I am court appointed counsel for Mr. Desper. A third year law student, Manahil Khan from the Georgetown Law Center, will be arguing on Mr. Desper's behalf with the court's permission. Yes, of course. And thank you very much. And Ms. Kahn, you may proceed. Your honor, may it please the court. The central dispute in this case is whether VDOC officials can indefinitely deny visitation between a father and a teenage daughter who wishes to see him, all for, in VDOC's own words, no specific reason. From 2009 to 2015, VDOC officials regularly facilitated visitation between Mr. Desper and KD, his minor daughter. Can I ask a foundational question before we get too deep into it? There's a fairly extensive regulation in place, and the regulation provides a mechanism for evaluating visitation rights in such circumstances. And it includes, importantly, a psychological or medical review in the process. And the question I have is whether you're challenging the regulation in this case. Are you saying the regulation itself is unconstitutional? No, we're not, your honor. Mr. Desper is alleging that the regulation was arbitrarily applied to him. All right, so now the question is, where did the defendant, the state, go wrong in applying the regulation? It looks to me, from what I can tell from what's been alleged, it looks to me that the process was followed. The unfortunate part was they weren't very responsive to him in telling him what happened. They sent an email to the mother, but they didn't tell him what happened. But we do have a look-peek, which is not necessary for a 12v6, but we do have a look-peek on the summary judgment side where the state said that the reasons are medical and it's in his file and he can look at that file at any time. So my question is, where did the state go wrong in applying its regulation? Your honor, at the 12v6 stage, we don't have a justification from the state as to how they've applied the regulation to Mr. Desper. Yes, there might be things in the summary judgment motion, but the district court didn't rule on that matter. Isn't the burden on you? I mean, the complaint alleges, really doesn't allege, basically alleges he doesn't know why he was turned down, but that doesn't amount to saying they violated the Constitution. Respectfully, your honor, the complaint alleges that there was an arbitrary denial. This was a father and a daughter that had visitation regularly for six years, both before and after the regulation was amended. But now you're challenging the regulation. The regulation basically, persons who have been sexual predators, and in this case, we had a 16-year-old that was a victim and the description that Mr. Desper gave in his application about the former conduct was very callous. It showed, I mean, he says, we were just fooling around. Well, you look at the conduct, and it was more than just fooling around. It was quite violative. And with respect to the rape, because taking advantage, he comes back and says, well, she had a better GPA than I did. And so that case, I'm not guilty in that case. So the medical examiner surely asked questions. We don't know what the questions asked, but surely asked questions of him and concluded that they're not satisfied he'll be safe. Or didn't satisfy the regulation. They have a discretionary right to make that judgment call. But you have the burden of showing that what they did was unconstitutional, and because you don't know the reason, you assume it's unconstitutional. I think that's where I have to end up, it seems to me, unless you can demonstrate something in the complaint that shows otherwise. Yeah, I have two responses to that. The first is that the regulation itself contemplates someone with Mr. Desper's criminal history being able to have visitation and was given visitation for six years, both before and after the regulation and regular visitation. Moreover, courts evaluate these types of claims on summary judgment. The Supreme Court in Overton made clear that visitation restrictions need to be challenged under the four-part Turner analysis. And there, the court looked at a whole trial record worth of testimony and decided that those regulations were reasonable. Your Honor is absolutely correct that we don't know what the state said in those regulations. We don't know why they're denying visitation. What we do have on the record is that a VDAC official has said that there's no specific reason that they're denying. They gave visitation in the past. Moreover, Your Honor, what goes to the scope of the arbitrariness in this case is the broad depth of the visitation that's being deprived. We're not just talking about in-person visitations. It's contact visitation, non-contact visitation, video visitation. The state has made no justification. None of this has been alleged. I mean, you're suggesting that now visitation could be limited to non-contact. You know, a lot of these prisons in Virginia, they have big rooms with tables at them and the guards are watching and walking around. But the visitors come in and sit at the table with the prisoner and they talk. And when the time is up, they leave. But they're face-to-face and they're in the presence of them. And that isn't being addressed and that isn't alleged. He alleges, basically, he alleges that I was formally allowed to visit and now I'm not and I wasn't given a reason. That's really what his complaint is, isn't it? No, Your Honor. He's made clear that he alleged there was a deprivation of visitation without legitimate justification. The state doesn't dispute that video visitation is available at their facilities and at the one that Mr. Desper is currently at. So is non-contact visitation. He included the regulations. The district court had before it all the options as this court does now. But the depth of the bans of visitation without giving any reason as to why the government's justifications are served is a wide sweeping ban, Your Honor. To suggest that Mr. Desper can't even bring a claim would violate what the Supreme Court set out in Overton. And that was to evaluate the scope of prisoners or incarcerated parents, constitutional rights, and the scope of an infringement on a developed record. Why hasn't Mr. Desper gone to look at his medical file and see what's laid out in there? He filed a motion for summary judgment in this case. And in response to his motion for summary judgment, the state came in and pointed out that the medical reasons are in his medical file and that he has access to it at any time. That's on his summary judgment motion. You would think as soon as he received that, he would go and look if he wanted to know what the reason was. Your Honor, the state didn't. He alleged that there was an arbitrary ban. The state didn't serve him. We don't know. I understand. We're looking at the 12B6. That's all we're looking at. But my question is, you suggest that he's being arbitrarily treated. And it looks to me like they went through all the four steps that the regulations provide. And in addition, he has been provided information in his summary judgment process that says he can look at his medical file at any time. That's a HIPAA violation for anybody else to go in. Your Honor, it was his own medical information, as he noted in his objections to suing. But moreover, Your Honor, this issue hasn't been decided on summary judgment. That's not on the record. That's not what the district court made its decision. The dispute before this court is whether an incarcerated parent states a valid claim when he alleges that prison officials have arbitrarily and indefinitely denied visitation. Ms. Kahn, as to your equal protection claim, why wasn't your client able to name specific individuals who were similarly situated? Your Honor, Mr. Desper's case is one where the state has all of the information. To be able to show a class of similarly situated people, he needs access to more information about how the state is classifying a particular parent's criminal history, their mental health evaluation. All of this information is in the state's hands, and Mr. Desper has no access. All he can do at the 12B-6 is make these allegations. He needs access to discovery to be able to prove his allegations. We don't know why we have these mental health evaluations, but the individual— In other words, he has to allege a plausible claim, and lawsuits are not intended to be just hollow allegations with the hope that discovery will reveal the claim. He has to have a plausible claim, and maybe he should have at least one person or other person he thinks might be in the same situation. Of course, the state did answer that in its affidavit. As you point out, that's not part of the consideration under a 12B-6, but it is in the file, and this is not a case of enormous unfairness. It's a case of his lack of knowledge. Apparently, he didn't even know his mother got the email about the denial, I don't think. Your Honor, he—certainly, yes, he does need to state a plausible claim, and he has. The Supreme Court in Overton has made clear that family visitation restrictions that are arbitrary are different. He's plausibly alleged arbitrariness. Here, he said that there was not only six years of visitation. We have an allegation that there was for no specific reason, but the way that the state has dealt with implementing the regulation to him has been arbitrary. Your Honor, all we have on the record is—even the summary judgment record—is these sealed mental health evaluations, but that individual didn't make the decision. The committee made the decision. We have no idea what they considered. We don't know how much deference they put to that mental health evaluation. All we have is these documents that were filed under seal, and Mr. Desperate needs discovery to be able to prove that. We need to know what actual reasons the committee gave, how that process was implemented. This court, in the due process context, in Akuma and Smith, has warned against prisons not giving a furnished factual basis or providing a meaningful opportunity for recovery into getting—into accessing visitation here. All we know is that they haven't given a reason. And to go back to the dispute of this case, Your Honor, all we're looking at is whether parents like Mr. Desperate can bring a claim. And to suggest that they can't, Your Honor, would be to say that prison officials can restrict any type of visitation for as long as they please without ever giving a reason or saying it's because we don't like you, and that parent would have no protection to be able to challenge such a claim. Mr. Desperate's—the contours of his rights are something that the district court can continue to address in summary judgment motions once we have all the facts. They can look at what other types of visitation would be available, what alternatives are available to him, the impact that visitation would have. These are all really important steps of the Turner analysis. But this court can't evaluate them because the only information we have on the record is limited. And the Supreme Court has made clear in Overton that the district court should evaluate and make factual basis on at least the final three Turner factors and parts of the first Turner factor as well, Your Honor. If the court has no further questions, I'll reserve my remaining time for rebuttal. Okay, that's fine. We'll hear you on rebuttal. Ms. Callan? Good morning, Your Honors, and may it please the court, Michelle Callan for appellees. If the last year and a half has taught us anything, it's that in-person social interactions are both valuable, but at times must be avoided to protect others. At issue here— You know, that's all understandable, and I suspect reading between the lines, this would probably prove to be a difficult case for Mr. Desper to bring in view of the history and his attitude to these things. But why wouldn't the prison send him a short email or note saying, we have denied your application, you can apply again next year? I think certainly that's a best practice. No, I think it's a lousy practice. In other words, his whole disappointment here is he kept calling to find out what happened and what the reasons were. And it seems to me prison authorities could create a lot of peace and legitimacy for its process by simply letting him know that on a more formal basis than letting it all come through his mother or having him go look at the medical record or whatever it is. It seems to me that he's made an application for visitation rights under the red thing. It went—he alleged it went through the process. He was examined twice by two different medical examiners, and he had two different evaluators, and this was all followed. Decision was made, but they didn't send him anything. It seems to me, if it's nothing else, it's a courtesy. And it would be very productive, it seems to me, to prison harmony to have that practice followed through. It's not in the regulation, but if anything else, that troubles me about the case. Certainly, Your Honor. And so the question then at this point is whether that lack of courtesy rises to a level of a constitutional violation. And that's really the crux of the issue here. And it simply, as a legal matter, does not rise to the level of a constitutional violation. Ms. Callan, the sum of your opponent's argument was there is a clear need for discovery, and we do have an adequacy of process rule. Why should we affirm the district court at this stage based on that need? Certainly, Your Honor. I think because even the face of the complaint and the documents appended thereto show the reasonable basis for denying Mr. Desper a visitation here. As Judge Niemeyer pointed out, the documents appended to the complaint show that Mr. Desper has failed to take responsibility for his action in connection with both sex offenses at issue here. The one that placed him on the registry in the first place, where he represents that he was just playing around, rather than taking accountability for this sexual offense against a 16-year-old in that case. And likewise, on the rape conviction for which he's currently serving his time, he likewise has not taken responsibility. So looking at the complaint itself and the documents appended thereto, they themselves support the decision in this case to not grant permission for in-person visitation. We certainly recognize that this policy, like many prison policies, seeks to balance multiple competing interests. And those include the safety of visitors, especially minor children, interest of inmates in safely seeing loved ones, assuring that sex offenders are not placed in tempting situations in which they might harm minor children, the safety of other inmates, threats to prison officials, and efforts to further penological goals generally. Given the various interests at stake, the Supreme Court emphasized in Overton that courts should accord substantial deference to the professional judgment of prison administrators who bear significant responsibility for defending the legitimate goals of a correction system and for determining the appropriate means for accomplishing them. The Supreme Court in Overton also made clear that the burden is not on the state to prove the validity of the prison regulations, but on the prisoner to disprove it. She's conceded, and it seems to me the complaint doesn't challenge the regulation. I think what's challenged, it seems to me at the heart of the complaint here, is he thinks they made a wrong decision because he thinks he should get visitation. But his biggest complaint is he doesn't know why they turned it down. They didn't give him any explanation. And so we're not, I don't think we're challenging the regulation. I think, and it's hard to say we can challenge substantively the decision, although on his complaint, the face of his complaint, there seems to be justification for denying visitation rights, at least on a temporary basis. But I get back to the fact that with such a fulsome regulation and all the steps and evaluators involved and decisions that are made, it would hardly be, it seems to me, it would hardly be burdensome on the state to send him an email or a message saying his application's been denied, we haven't seen enough improvement, and apply again next year. Certainly, Your Honor, we don't contest that. But what we do contest is that the failure to provide that notification, that that rises to a level of a constitutional violation. And the briefing, you know, by Mr. Gusford itself does not establish that a failure to provide notification of the result of the committee's decision, that that in and of itself rises to a level of a constitutional violation. The parties here agree that Overton sets a standard of rational basis review. And I think the place that my friend on the other side departs from Overton is that rather than apply the rational basis standard set forth in Overton, Mr. Gusford asks this court to evaluate whether the regulation is rational as it applies to him. And he does not argue that that is premised exclusively on a failure to provide notification. His view of rational basis doesn't, isn't an accurate representation of how rational basis works. Because by its very nature, rational basis review looks at a policy as a whole and the general justification for that policy. So an argument that a policy is not rational as it applies to a single person is an argument… You're shooting at a straw man. Well, but I think that's how rational basis works, Your Honor. It's a challenge to the policy as a whole. And the argument raised here that the policy is not rational as it applied to a single person, that's an argument that the policy is over-inclusive. But evaluating whether a policy is over or under-inclusive is a question of strict scrutiny, not rational basis review. Inherent in permitting policies to not be perfectly tailored, that is, in allowing them to be somewhat over-inclusive or under-inclusive, as is the case with rational basis review, means that at times a policy will apply to some people for whom the policy is not a perfect fit. That does not make the policy arbitrary, nor does it mean that the policy fails rational review. And of course, all of this assumes that there is a constitutionally protected interest in the first place. Far from holding that incarcerated people have a constitutionally protected interest in in-person visitation, this court has suggested the opposite in White v. Keller, in Oxidine v. Williams, and in Williams v. Osment. And to be clear, this case is about in-person visitation, not about video visitation. There is a separate program laid out in the operating procedures for video visitation, but this is a different program, and that's available at JA 49. Nowhere does Mr. Desper allege that he applied for and was denied video visitation under that separate program. If he applies under that program for video visitation and he's denied video visitation, he can certainly contest that. But that is not this case. This case is about in-person visitation. To rule in Mr. Desper's favor, this court would have to make two exceptional leaps. It would have to recognize a right that neither this court nor the Supreme Court has ever recognized, a right to in-person visitation for someone who's incarcerated. And second, it would have to conclude that a policy fails rational basis review simply because it is over-inclusive as to one person. But that is not rational basis review. All of this is notwithstanding the numerous other states with similar policies that have been upheld. Neither of these leaps Mr. Desper asks this court to make is supported by the law. The district court therefore properly held that Mr. Desper failed to state a claim. And unless the court has any additional questions, we ask that this court affirm. Thank you. Thank you, Ms. Callum. All right, Ms. Kahn, you have some rebuttal? Yes, Your Honor. Your Honor, I have three brief points on rebuttal. First, opposing counsel is wrong to suggest that courts haven't recognized a claim like Mr. Desper's. Second, opposing counsel inverses the 1236 standard. And third, opposing counsel conflates the as-applied and facial challenge. First, Your Honor, the Supreme Court clearly laid out in Overton that visitation restrictions should be evaluated before a court-turner test. And it found that those particular regulations were valid. It did not hold anything about visitation restrictions as a matter of law. Instead, the decision reflected that visitation restrictions that are applied arbitrarily or permanently present a different challenge. And Mr. Desper's case picks up where Overton left off. As this court's sister circuits have recognized, most recently in Easterling v. Thurmer, the Seventh Circuit found itself to be joining the weight of authority in incorporating Overton. But an incarcerated parent, even one with a history of sex offenses, states a plausible claim when he alleges that prison officials have arbitrarily and indefinitely denied visitation with his minor child. Ms. Talon is right that the policy balances the interests of the prisoners, the visitor's safety. But the policy isn't being challenged. She's only defended the state's reasons for implementing this policy but hasn't explained any reason as to why it was applied to Mr. Desper the way that it was. And moreover, prison officials have to exercise their judgment in order for the court to defer it. On this record, we don't have an exercise of any prison official's judgment. The state can submit all of this information on a motion for summary judgment and the district court can take a look at the full factual development of the case and make a decision about the scope of Mr. Desper's right and whether infringement was made. But on this record, that's simply not possible. And to deny Mr. Desper's claim here would be to suggest that no incarcerated parent in any circumstances, no matter how arbitrary the prison's denial of visitation is, can challenge visitation. Moreover, whether or not video visitation would satisfy the state's interest and accommodate Mr. Desper's parent-child relationship is another question that is suited for summary judgment. Ms. Talon says it's a separate program, but Mr. Desper is suing for injunctive relief of an ongoing ban. We have no reason as to why video visitation wouldn't work here, why that can't be a plausible alternative. This court in other First Amendment contests, for example in Jehovah v. Clark, has found that a prisoner made it past a 12b6 motion when there was a suggestion of an arbitrary application and there was a clearly reasonable alternative that could be inferred based on the complaint. And that brings me to my second point, that the 12b6 standard requires that inferences be made in Mr. Desper's favor, not the state's. So anything that is suggested in his complaint needs to be interpreted in his favor. The state can't now inverse the standard and say that there's plausible reasons why they might have denied him visitation. Mr. Desper deserves that inference on this limited record, and we have no information as to what decision the committee made, why they chose that, and what changed after six years of giving visitation in that same system that prison officials facilitated. On that question, I thought it was the enactment or adoption of the regulation that was then applied. In other words, before, I don't think there was a regulation, was there? There wasn't, Your Honor. Yeah, so I think the explanation for why there was a change was the enactment of the regulation. Your Honor, the timeline doesn't match that. The regulation went into effect in March 2014. It wasn't until almost two years later that visitation was restricted. Under those two years, prison officials knew that this policy existed. Mr. Desper was still regularly visiting with his daughter. There was no mention that visitation wasn't safe or that there was some reason that visitation wasn't appropriate, until all of a sudden, one day, she's no longer on his visitors list. That suggests a plausible, arbitrary denial of visitation. And since then, the states continued to deny visitation, and no matter how many times he's reached out or tried to better position himself to be able to get visitation, they haven't provided any opportunity. Your Honor, lastly, Ms. Callan conflates the as-applied and facial challenge of the regulation. The Supreme Court has made clear that an as-applied Turner analysis is appropriate. Your Honor, I see that my time has expired. May I briefly conclude? Sure. Your Honor, I would direct this court to the Sixth Circuit's decision in Flanagan, Wilkinson, where on Note 5, it clearly notes that the Supreme Court precedent makes clear that as-applied Turner challenges are appropriate. And for those reasons, we ask you to recognize Mr. Desper's as-applied Turner challenge and reverse the district court's dismissal of his complaint. Thank you. Thank you, Ms. Callan. First of all, I want to recognize Ms. Hashimoto's appointment. You know that's enormously important for us to have counsel representing defendants, and that's an important role. We appreciate it very much. And especially in this case where we've gotten an expert advocate. Are you a third year now, 3L? Yes, Your Honor. And so you're going to come back here next year as a fully-blown lawyer and argue further cases before us? Let's keep our fingers crossed. Thank you, Your Honor. Anyway, we have a tradition where we come off the bench and we shake hands to all of you. And we can't carry that out, but we want to do that virtually here with you and recognize your arguments on both sides. And thank you for them. And thank you for your service. And you did a fine job. I think you're on the way to a big career.
judges: Paul V. Niemeyer, Henry F. Floyd, Allison J. Rushing